# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

EUFEMIA GUILLEN,

     Plaintiff

v.

B.J.C.R. LLC, et al.,

     Defendants

Case No.: 3:20-cv-00317-MMD-CSD

**Order**

Re: ECF Nos. 51, 58

    Defendants have filed a motion to compel production of Plaintiff's immigration records. (ECF No. 51, 51-1 to 51-5.) Plaintiff filed a response and countermotion for protective order. (ECF Nos. 57, 58.)[1] Defendants filed a reply in support of their motion and response to Plaintiff's countermotion. (ECF Nos. 62, 63.)[2] Plaintiff filed a reply in support of her countermotion. (ECF No. 66.)

    For the reasons set forth below, Defendants' motion to compel is denied, and Plaintiff's motion for a protective order is granted in part, and denied in part as moot.

## I. BACKGROUND

    In her first amended complaint (FAC), Plaintiff sues B.J.C.R. L.L.C., B.J.H.S., LLC, R.C.S.J, LLC, Dhilan One L.L.C., Champak (Chuck) Lal and Bharat (Barry) B. Lal. Plaintiff alleges that she worked for Defendants at the Comfort Inn in Elko, Nevada, as a kitchen and breakfast room worker for approximately 16 years before she was constructively discharged on March 19, 2019. Defendants also owned and/or managed the Days Inn and Rodeway Inn in Elko,

---

[1] These documents are identical, but were docketed separately.

[2] These documents are identical, but were docketed separately.

and on occasion, Plaintiff would be sent to run errands or to work at the Days Inn or Rodeway Inn.

Plaintiff alleges a pattern of sexual harassment and assault, including rape, by Defendants Chuck and Barry between 2018 and 2019. She avers there is video evidence documenting some of these instances of harassment and assault. Plaintiff further alleges she was warned not to say anything about the abuse because she was a "wetback" and would not be believed, and she was threatened with deportation to Mexico. She asserts a claim of discrimination and hostile work environment based on race under 42 U.S.C. § 1981, as well as state law claims of assault, battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent training, supervision and retention, tortious constructive discharge, aiding and abetting and concert of action, and a statutory claim under NRS 41.690. (ECF No. 25.)

The motion to compel and motion for protective order relate to four (4) requests for the production of documents: numbers 6-9. The requests seek all documents Plaintiff received or submitted to/from United States Citizenship and Immigration Services (USCIS) or any other Government agency in connection with any application for immigration status or work authorization sought in the United States. (ECF No. 51-2 at 3-9.)

On July 9, 2021, Plaintiff served supplemental responses to requests for production 6-9. On that same date, Plaintiff's counsel, Mr. Kemp, advised defense counsel, Ms. Ketner, that Plaintiff would obtain the records from USCIS and would produce them to Defendants subject to a tailored protective order. (ECF No. 57-4 at 3.) Ms. Ketner responded: "Ok – great. To be clear,

you will request all records regarding her U Visa[3] correct? Also, you agree to produce the entirety of what you receive from USCIS, correct? …" (*Id.*) Mr. Kemp responded that they would request everything regarding the U Visa and would produce it, with the caveat that they would want a protective order for any sensitive documents, which they would not be able to identify until they received the documents. (ECF No. 57-4 at 2.)

On July 12, 2021, Plaintiff's counsel submitted a Freedom of Information Act (FOIA) request for Plaintiff's immigration records and U Visa application to USCIS. (ECF No. 51-4; ECF No. 57-5.)

On August 20, 2021, USCIS sent Mr. Kemp a response to the FOIA request. USCIS identified 1,061 pages that were responsive to the FOIA request. It produced 908 of those pages to Mr. Kemp (202 of which were released in part), and withheld 153 of the responsive pages as exempt pursuant to 5 U.S.C. §§ 552(b)(3), (b)(6), (b)(7)(C), and (b)(7)(E). The letter advised of a right to file an administrative appeal within 90 days. (ECF No. 51-5.) Mr. Kemp states that he received this letter and the documents during the first week of September. (Kemp Decl., ECF No. 58-6 at 3 ¶¶ 4-5.)

The production from USCIS did not include any of the U Visa documents. (Kemp Decl., ECF No. 58-6 at 5 ¶ 11; Gallagher Decl., ECF No. 58-7 at 3 ¶ 9.) Plaintiff's counsel represents he did not realize the U Visa documents were among the documents USCIS had withheld when he received the letter. Mr. Kemp was busy with various personal and business matters, and so he forwarded the documents produced by USCIS to his co-counsel, Ms. Gallagher. Due to

---

[3] The U Visa program offers temporary nonimmigrant status to victims of certain crimes occurring in the United States, including sexual assault. The U Visa grants victims and their families four years of nonimmigrant status, and they can apply for lawful permanent resident status after three years, and while their petition is pending, they can apply for work authorization. 8 U.S.C. §§ 1101(a)(15)(U)(i), (iii); 1184(p)(6), 1255(m)(1)(A).

vacations, personal matters, and trial and case preparation, Ms. Gallagher and Mr. Kemp did not review the documents until the November/December 2021 timeframe. (Kemp Decl., ECF No. 58-6 at 3 ¶ 6; Gallagher Decl., ECF No. 58-7 at 2 ¶¶ 3, 5, 8.)

Plaintiff's counsel represents that the documents produced by USCIS span from 1988 to May of 2015.  These documents relate to 2000-2001 and 2013-2014 immigration matters, and contain private family documents, birth certificates, state and federal tax returns dating back to 1997, medical records and bills related to minor children, insurance policy documents, DMV records, real estate transaction records, marriage certificates, and other information about third parties. (ECF No. 58 at 18; Kemp Decl., ECF No. 58-6 at 5 ¶ 12; Gallagher Decl., ECF No. 58-7 at 3 ¶ 8.)

On October 26, 2021, Ms. Ketner sent Mr. Kemp an email asking if he had received the immigration records yet. (ECF No. 51-3 at 31.) She also called Mr. Kemp's office and left a message. (Ketner Decl., ECF No. 51-1 at 3 ¶ 7.) She called and left another message for Mr. Kemp in early November, but he did not return her call. (*Id*. ¶ 8.) Ms. Ketner sent an email to follow up on November 5, 2021. (ECF no. 51-3 at 30-31.) On November 15, 2021, Mr. Kemp sent an email to Ms. Ketner advising that they had received the immigration records, and that they would need to go through the records and meet and confer regarding formulating a protective order. Mr. Kemp advised that he was in the middle of a brief for the Ninth Circuit and then would be on vacation for the week of Thanksgiving, but hoped to get back to Ms. Ketner the week after Thanksgiving. (ECF No. 51-3 at 30.)

On November 22, 2021 (the week of Thanksgiving), Ms. Ketner sent Plaintiff's counsel an email asking when Plaintiff might be able to produce the immigration records or present Defendants with a protective order. Mr. Kemp responded that Ms. Gallagher was reviewing the

records to determine what would need to be protected. Ms. Ketner responded asking for Mr. Kemp's availability to meet and confer. (ECF No. 51-3 at 24-25.) The following day, Ms. Ketner again asked for availability for a meet and confer. Mr. Kemp responded that he was on vacation and would not be available until the following week. (*Id*. at 23.) That same day, Ms. Ketner contacted Ms. Gallagher's office and insisted on scheduling a meeting to discuss outstanding discovery issues. Ms. Ketner and Ms. Gallagher had a meet and confer regarding multiple discovery issues, including the status of the immigration records. (Ketner Decl., ECF No. 51-1 at 3 ¶¶ 9-10; Gallagher Decl., ECF No. 58-7 at 2 ¶ 2.) Ms. Gallagher advised Ms. Ketner she was preparing for a trial starting on December 7, 2021, and would not be able to complete her review of the immigration documents until after the trial, and that Mr. Kemp had also been busy with work projects and the ongoing health issues of his mother. (Gallagher Decl., ECF No. 58-7 at 2 ¶ 3.)

On November 29, 2021, Mr. Kemp sent Ms. Ketner an email that they were going through the immigration records. (ECF No. 51-3 at 21.) The following day, Ms. Ketner asked if they could prepare the protective order, and Mr. Kemp responded they would work on it. (ECF No. 51-3 at 14-15.) On December 6, 2021, Ms. Ketner sent another email asking for an estimate for the draft protective order and production of the immigration records. (ECF No. 51-3 at 8.) Mr. Kemp responded that he had a major Ninth Circuit brief due that week, and a two-day continuing legal education (CLE) course at the end of the week, but he would do his best. (ECF No. 51-3 at 6, 8.) The next day, Ms. Ketner asked about the protective order again, and said she would request a case management conference if it was not completed that week. (*Id*. at 5.)  On December 10, 2021, Ms. Ketner called Ms. Gallagher's office and was advised she was out until

Monday. She left a message, but Ms. Gallagher did not return her call on Monday. (Ketner Decl., ECF No. 51-1 at 3 ¶ 11.)

On December 13, 2021, Mr. Kemp sent an email to Ms. Ketner reiterating that he had been on vacation and busy with work and a CLE, and Ms. Gallagher had also been tied up with other things, and he appreciated Ms. Ketner's patience on the matter. (ECF No. 51-3 at 5.) Ms. Ketner asked when the protective order would be drafted, and when the immigration records would be produced. (ECF No. 51-3 at 4.) Ms. Gallagher responded that she would be finished going through the records by the end of the week, and that Mr. Kemp was working on the protective order. (*Id*.) Mr. Kemp added that the protective order would depend in part on completion of the review of the documents. Ms. Ketner responded that all of the immigration records could be marked confidential and would only be seen by counsel, Plaintiff, her treating providers, and Defendants' expert witness. (*Id* at 2.)

On December 15, 2021, Ms. Ketner filed a motion requesting a case management conference (CMC) regarding multiple discovery issues, including the production of Plaintiff's immigration records and the corresponding protective order. (ECF No. 40.) Magistrate Judge William G. Cobb held a CMC on December 29, 2021. Judge Cobb ordered the parties to meet and confer on December 30, 2021, to discuss the outstanding discovery issues, and ordered a follow-up CMC for January 11, 2022. (ECF No. 46, 47.) In a status report following the meet and confer session, the parties advised the court that Plaintiff maintained her non-U Visa immigration records from 2015 and prior are not discoverable, and she intended to file a motion for protective order. Defendants argued that Plaintiff should produce all records obtained from USCIS, except any documents related exclusively to a third-party. (ECF No. 48.)

Ms. Gallagher completed her review of the documents provided by USCIS on

December 17, 2021, and discussed the review with Mr. Kemp on December 20, 2021. (Gallagher Decl., ECF No. 58-7 at 3 ¶ 8; Kemp Decl., ECF No. 58-6 at 5 ¶ 11.)

At the December 30, 2021 meet and confer, Plaintiff's counsel offered to resolve the dispute by providing the last dated immigration application from the file with USCIS's decision stamp on it, which would provide the information with respect to Plaintiff's immigration status as of the dates applicable to the events in this case. Defense counsel refused this offer. (Kemp Decl., ECF No. 58-10 at 4 ¶ 9.)

At the January 11, 2022 follow-up CMC, Judge Cobb commented that the USCIS/U Visa records were *likely* discoverable, but directed the parties to file an appropriate motion if they could not resolve their dispute. (ECF No. 49.) The filing of these motions ensued.

On January 18, 2022, Mr. Kemp sent a letter to an attorney Plaintiff had used for immigration matters, Elizabeth Rosario, Esq., but it turned out that Ms. Rosario did not assist Plaintiff with the U Visa application. (Kemp Decl., ECF No. 58-10 at 3 ¶ 5; ECF No. 58-11.) Plaintiff's counsel believes that the U Visa application was filed on behalf of Plaintiff by the Elko Police Department, or with the assistance of that agency. (Kemp Decl., ECF No. 58-10 at 3 ¶ 6.)

On January 19, 2022, Plaintiff served amended supplemental responses to RFPs 6-9, asserting various objections, including that the requests are not relevant, are overly broad, not proportional to the needs of the case, not calculated to lead to the discovery of admissible information, and invade Plaintiff's right to privacy. The amended supplemental responses state that the U Visa application documents were withheld by USCIS under a claimed statutory exemption to disclosure, and therefore, could not be produced. Plaintiff further responded that she was withholding the documents provided by USCIS for the objections previously mentioned,

1   and elaborated on her relevance, proportionality, and privacy objections by citing a series of

2   cases which Plaintiff claims support the proposition that immigration records are not

3   discoverable. (ECF No. 58-9.)

4        On January 24, 2022, the case was reassigned to the undersigned magistrate judge. (ECF

5   No. 50.)

6        On the same date, Defendants filed this motion to compel Plaintiff to produce her

7   immigration records, including all documents submitted to or received by USCIS in connection

8   with an application for immigration status or work authorization. Defendants argue that these

9   documents are relevant because Defendants' theory of the case centers on Plaintiff's credibility

10  and motivation to fabricate her allegations based on her immigration status. Despite Plaintiff

11  representing that she would produce the records subject to a tailored protective order, Defendants

12  contend that Plaintiff has yet to produce a single immigration record and waited until the motion

13  to compel was filed to request a protective order to withhold all of her immigration records.

14  Defendants assert that Plaintiff should have filed an appeal of the USCIS decision, and timely

15  alerted them to the existence of the USCIS letter. Defendants suggest that the court should

16  conduct an *in camera* review to determine whether USCIS properly withheld the responsive

17  documents. Finally, Defendants maintain they are entitled to recover reasonable fees and

18  expenses incurred in connection with the motion to compel.

19       Plaintiff argues that to resolve a dispute regarding objections made to Defendants'

20  requests for immigration records, the parties agreed that the requests would be limited to

21  Plaintiff's U Visa application, which Plaintiff agreed to request from USCIS and provide to

22  Defendants subject to a narrowly tailored protective order. The U Visa documents, however,

23  were not provided by USCIS. Plaintiff maintains that they did not agree to pursue or litigate any

type of appeal of USCIS's decision and Plaintiff herself is not in possession of the U Visa records. (Kemp. Decl., ECF No. 58-10 at 3 ¶ 4.) In sum, Plaintiff claims there are no U Visa records in her possession, custody, or control to produce.

With respect to the remaining records produced by USCIS, Plaintiff contends that the requests for production are facially overbroad and not proportional to the needs of the case insofar as they seek "any and all" documents without a temporal or other reasonable limitation. Plaintiff further argues that she should not have to produce the immigration records obtained from USCIS because of the *in terrorem* chilling effect production would have on Plaintiff and other claimants seeking redress of their civil rights. Finally, Plaintiff asserts that Defendants are not entitled to attorney's fees where the nondisclosure of the records was substantially justified because Plaintiff's position is reasonable.

## II. DISCUSSION

### A. Scope of Discovery, Motion to Compel, Motion for Protective Order

"Unless otherwise limited by court order …Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

A party may move for an order compelling a response to a request for production of documents if a party fails to produce documents or provides an evasive or incomplete response. Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iv), (a)(4).

In addition, a party may move for a protective order, including an order prohibiting the discovery, on a showing of good cause, to protect the party from "annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1)(A). The burden is on the party seeking the order to make the showing of good cause "by demonstrating harm or prejudice

that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (citing *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)). "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Id.* (citation and quotation marks omitted).

Both a motion to compel and motion for protective order require a certification that the movant has in good faith conferred or attempted to confer to resolve the dispute without court action. Fed. R. Civ. P. 26(c)(1); Fed. R. Civ. P. 37(a)(1); LR IA 1-3(f) and LR 26-6(c).

**B. Meet and Confer**

The parties engaged a meet and confer session on this issue on December 30, 2021, pursuant to Magistrate Judge Cobb's order, satisfying the meet and confer requirements of Federal Rule of Civil Procedure 37 and Local Rule 26(c).

**C. Relevant Law**

In *Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004), the district court entered a protective order that precluded the defendant from inquiring into the plaintiff's immigration status. The plaintiffs were suing for disparate impact discrimination based on national origin in violation of Title VII (and corresponding California state laws). *Rivera,* 364 F.3d at 1061. They sought reinstatement (and front pay for those not seeking reinstatement), backpay, compensatory, punitive and other damages. *Id.* The plaintiffs argued they had been verified for employment at the time they were hired and further questions pertaining to their immigration status were not relevant. *Id.* The magistrate judge concluded that allowing the defendant to obtain information about immigration status through discovery "would unnecessarily chill legitimate claims of undocumented workers under Title VII." *Id*. at 1062. The Ninth Circuit agreed.

"By revealing their immigration status, any plaintiffs found to be undocumented might face criminal prosecution and deportation." *Id*. at 1064. "As a result, most undocumented workers are reluctant to report abusive or discriminatory employment practices." *Id*. at 1065 (citations omitted). The court concluded that if it allowed such inquiries in every case like this, "countless acts of illegal and reprehensible conduct would go unreported." *Id*.

The chilling effect of allowing this discovery also extends to documented workers. *Id*. "Documented workers may fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends; similarly new legal residents or citizens may feel intimidated by the prospect of having their immigration history examined in a public proceeding." *Id*. As a result, these individuals may decide not to pursue their civil rights claims. *Id*.

The court found this chilling effect "constitutes a substantial burden, both on the plaintiffs themselves and on the public interest in enforcing" the anti-discrimination laws. *Id*. at 1066.

The court then addressed whether the burden was "undue" to justify the issuance of a protective order. *Id*. NIBCO argued that the plaintiffs' immigration status was relevant to what damages the plaintiffs could recover, and therefore, should be allowed. *Id*. The court found that immigration status was not relevant to liability in that case, and even if the law precluded an award of backpay to illegal immigrants, the availability of backpay could be determined after the liability phase. *Id*. at 1074-75. *Rivera* emphasized that "[d]istrict courts need not condone the use of discovery to engage in 'fishing expeditions.'" *Id*. at 1072 (citation omitted). The court noted that "[r]egrettably, many employers turn a blind eye to immigration status during the hiring process," but then "insist upon their enforcement when employees complain." *Id*.

1    *Rivera* did not address, and the Ninth Circuit has not since confronted the issue of the

2 discovery of immigration records when immigration status *is* relevant to liability, or the specific

3 issue of discoverability of U Visa records where the defendant claims that the plaintiff was

4 motivated to fabricate his/her claims because of the prospect of gaining favorable immigration

5 status through the U Visa program.

6    District court cases have both allowed and denied such discovery, and thus, are not

7 particularly helpful. *See Washington v. Horning Brothers, LLC*, 2:17-cv-0149-TOR, 2018 WL

8 2208215 (E.D. Wash. May 14, 2018) (finding that possible fabrication or exaggeration of claims

9 because of potential U Visa status did not outweigh the chilling effect of disclosing immigration

10 status); *E.E.O.C. v. Global Horizons*, No. CV-11-3045-EFS, 2013 WL 3940674 (E.D. Wash.

11 July 21, 2013) (allowed discovery of T Visa information where it was undisputed the claimants

12 were unlawfully in the United States and there was no evidence of a justifiable fear of

13 deportation if the T Visa information was discovered and the information was subject to a

14 stipulated protective order); *Camayo v. John Peroulis & Sons Sheep, Inc.,* No. 10-cv-00722-

15 MSK-MJW, 11-cv-01132-REB-MJW, 2012 WL 5931716 (D. Colo. Nov. 27, 2012) (finding the

16 discovery of U Visa and T Visa information was relevant to damages and the defenses and

17 theory of the case regarding motivation and fabrication, and that any *in terrorem* effect was

18 outweighed by the compelling need to obtain this information and that effect could be

19 ameliorated through restrictions on the use of such information); *David v. Signal Int'l*, 257

20 F.R.D. 114 (E.D. La. 2009) (while credibility is always at issue, "[t]hat, in and of itself, does not

21 warrant an inquiry into the subject of current immigration status when such examination would

22 pose an undue burden on private enforcement of employment discrimination laws."); *Rengifo v.*

23 *Erevos Enter., Inc.*, No. 06 Civ. 4266(SHS)(RLE), 2007 WL 894376 (S.D.N.Y. Mar. 20, 2007)

1  (credibility did not warrant unlimited inquiry into immigration status or outweigh the chilling

2  effect disclosure of immigration status has on employees seeking to enforce civil rights).

3      The Fifth Circuit confronted this issue in *Cazorla v. Koch Foods,* 838 F.3d 540 (5th Cir.

4  2016). In that case, mostly Hispanic employees alleged abuse at work, including sexual assault

5  and harassment, and received adverse employment action in response to their complaints.

6  *Cazorla,* 838 F.3d at 545. Koch argued the employees made up their claims to secure U Visas. A

7  lawsuit was filed by the Equal Employment Opportunity Commission (EEOC), which was

8  consolidated with the suit brought by the individual employees. *Id*. at 546.

9      The Fifth Circuit explained that the U Visa program offers "temporary nonimmigrant

10  status to victims of 'substantial physical or mental abuse' resulting from certain offenses,

11  including sexual assault, abusive sexual contact, extortion, and felonious assault." *Id*. at 545

12  (citing 8 U.S.C. § 1101(a)(15)(U)(i), (iii)). To receive a U Visa, a law enforcement agency must

13  certify that it is aiding an investigation into the alleged offenses, and USCIS conducts a *de novo*

14  review and confirms eligibility. *Id*. (citing 8 U.S.C. § 1101(a)(15)(U)(i), 8 U.S.C. § 1184(p)(1),

15  (4), 8 C.F.R. § 214.14(c)(2), (4)-(5)). The U Visa grants the victim and their family members

16  four years of nonimmigrant status, and they can apply for lawful permanent residence after three

17  years. *Id.* (citing 8 U.S.C. §§ 1184(p(6), 1255(m)(1)(A)). In addition, those with "'pending, bona

18  fide' U visa applications may obtain work authorization." *Id*. (citing 8 U.S.C. § 1184(p)(6)).

19      In *Cazorla,* the plaintiffs moved for a protective order insofar as Koch sought information

20  relating to their immigration status and history in discovery. *Id*. The magistrate judge granted the

21  motion for protective order, finding that "[a]ny relevance of immigration status is clearly

22  outweighed by the *in terror[em]* effect disclosure of this information would have in discouraging

23  the individual plaintiffs and claimants from asserting their rights in this lawsuit." *Id*. (quotation

marks omitted). Koch subsequently sought information and records regarding U Visas, which "inevitably would have revealed the immigration status of any claimants who applied for U Visas, as well as that of their families." *Id*. Koch moved to compel production of the U Visa records and for reconsideration of the protective order. The magistrate judge granted the motion in part, and allowed discovery of the U Visa information, this time finding that the relevance of the information "clearly outweighs its *in terror[em]* effect, [because] any individuals who have applied for immigration benefits have, necessarily, already disclosed their immigration status to federal authorities." *Id*. (quotation marks omitted).

The plaintiffs sought review of that order. The district judge found that 8 U.S.C. § 1367 and corresponding regulations precluded the EEOC from disclosing the information about the U Visa applications, but this information could be sought from the claimants themselves. While the district judge held that the *U Visa* information was discoverable from the claimants, it did not allow discovery of *other immigration records*. *Id*. at 547. A protective order was entered governing use of the U Visa information, restricting its use for purposes unrelated to the lawsuit "unless … required by relevant law" and prohibited Koch from disseminating the information to law enforcement unless it would violate criminal law. *Id*. The EEOC sought interlocutory review of the district judge's order.

The Fifth Circuit confirmed that section 1367 barred disclosure of the U Visa information by the EEOC, because it was an agency receiving information under the section. *Id*. at 551-552. Section 1367 did not, however, preclude seeking the information from the individual claimants. *Id*. at 552-53. In finding section 1367 allowed the information to come from individual claimants, *Cazorla* recognized that individuals may, in turn, assert arguments to avoid disclosure under "the basic constraints of the discovery process[.]" *Id*. at 554.

The Fifth Circuit pointed out that the U Visa process itself "contains numerous protections against fraud[,]" but nevertheless found it "plausible that some undocumented immigrants might be tempted to stretch the truth in order to obtain lawful status—and perhaps even lawful *permanent* status—for themselves and their families." *Id*. at 558 (emphasis original). Thus, the Fifth Circuit found no error in the district court's determination that the U Visa information was relevant and "potentially probative of fraud." *Id*. at 559.

In addressing the undue burden the discovery would have on the claimants, the district court concluded there was not a fear of being fired based on the U Visa discovery because most of them no longer worked for the company, and others could be protected by an appropriate order. In addition, the district court said the claimants did not need to fear that Koch would report them to criminal or immigration authorities because the protective order could preclude this, and they would have already reported their immigration status to federal authorities in connection with their U Visa applications. As such, the district court concluded that the relevance outweighed any burden. *Id*.

The Fifth Circuit concluded that the district court did not adequately consider the effects of the disclosure, both to the claimants and others. The court found the claimants could all fear that they and their families would be reported to immigration authorities if Koch learned of their U Visa applications, even with a protective order in place, noting that "employers commonly and unlawfully retaliate against irksome workers by reporting or threatening to report them to immigration authorities." *Id*. at 560-61.

Addressing the argument that the claimants had already disclosed their immigration status to federal authorities in applying for the U Visa, the Fifth Circuit indicated that their fears were still valid because the federal officials who process U Visa applications are not the same as

1  those who are responsible for immigration enforcement. *Id*. "[H]aving submitted U Visa

2  applications does not rule out an *in terrorem* effect from further disclosure[.]" *Id*.

3       The Fifth Circuit then found the district court failed to address "how U Visa litigation

4  might intimidate individuals outside this litigation, compromising the U Visa program and law

5  enforcement efforts more broadly." *Id*. at 562. "Thousands apply for U Visas each year, and they

6  do so with the assurance that federal authorities will keep their applications confidential." *Id*.

7  "Allowing U Visa discovery from the claimants themselves in this high-profile case will

8  undermine the spirit, if not the letter, of those Congressionally sanctioned assurances and may

9  sow confusion over when and how U Visa information may be disclosed, deterring immigrant

10  victims of abuse—many of whom already mistrust the government—from stepping forward and

11  thereby frustrating Congress's intent in enacting the U Visa program." *Id*. at 562-63. The court

12  highlighted that "immigrants are disproportionately vulnerable to workplace abuse and, not

13  coincidentally, highly reluctant to report it for fear of discovery and retaliation." *Id*. at 563.

14       In sum, the Fifth Circuit found that allowing the U Visa discovery "may have a chilling

15  effect extending well beyond this case, imperiling important public purposes." *Id*. at 564.

16  Weighing "all of the problems U Visa discovery may cause against Koch's admittedly

17  significant interest in obtaining the discovery," the Fifth Circuit concluded the discovery

18  approved by the district court "would impose an undue burden and must be refined." It remanded

19  the case to the district court to devise an approach for U Visa discovery "that adequately protects

20  the diverse and competing interests at stake." *Id*.

21  **D. U Visa Records**

22       As in *Cazorla*, this court finds that the U Visa information is relevant to Plaintiff's

23  motive and potentially probative of fraud. Plaintiff appears to acknowledge the relevance of

1  these documents as she agreed to request them from USCIS and produce them subject to a

2  tailored protective order.

3       It is also clear under *Rivera* and *Cazorla*, that U Visa discovery presents a substantial

4  burden on Plaintiff and the public interest. The court's inquiry then shifts to whether that burden

5  is undue, which requires an examination of the hardships to Plaintiff and the public versus the

6  interests Defendants put forward to justify allowing this discovery. The court need not reach that

7  portion of the analysis because the fact remains that Plaintiff is not in possession of the U Visa

8  documents. The USCIS has withheld those documents from production.[4] Now, Plaintiff could

9  have appealed USCIS's decision to withhold some of the documents, but Defendants

10  acknowledge she did not agree to do so. Defendants also assert that Plaintiff should have timely

11  notified defense counsel of USCIS's response.

12       The court is disappointed in the significant delay in notifying Ms. Ketner of USCIS's

13  response and delay in reviewing the documents USCIS did produce. The court does not condone

14  the manner in which Plaintiff's counsel approached this issue, and cautions Plaintiff's counsel

15  that future dilatory conduct will not be viewed favorably. Ultimately, that does not change the

16  fact that the documents have been withheld by USCIS.

17       Defendants argue that the court should order production of the documents by USCIS for

18  *in camera* review to determine whether they were properly withheld by USCIS, citing *Islamic*

19  *Shura Council of Southern California v. Federal Bureau of Investigation*, 635 F.3d 1160, 1165

20  (9th Cir. 2011).

21

22

23  [4] Plaintiff now indicates that it was the Elko Police Department that assisted her with the U Visa application.  However, 8 U.S.C. § 1367 would appear to bar disclosure of the information by the Elko Police Department.

1    *Islamic Shura Council* is inapposite. In that case, individuals and organizations submitted

2    a FOIA request to the F.B.I. seeking information about any surveillance conducted on them by

3    the Government. The individuals and organizations ended up filing a FOIA lawsuit in the U.S.

4    district court challenging the adequacy of the search for responsive documents. The district court

5    held two *ex parte, in camera* proceedings to review the documents. The district court then issued

6    a sealed, *ex parte* order finding that most of the documents were properly withheld by the

7    Government under FOIA exemptions, but also found the Government had misled the court and

8    the plaintiffs in representing that many of the documents sought did not exist. As a result, the

9    district court said that it would unseal its order unless otherwise directed by the Ninth Circuit.

10   The Government appealed the order on the grounds that the sealed order itself contained

11   sensitive information that should not be in the public purview.

12        The Ninth Circuit confirmed that "FOIA expressly authorizes district courts to examine

13   documents *in camera* to review the propriety of an agency's withholdings." *Islamic Shura*

14   *Council*, 635 F.3d at 1165. "District courts have jurisdiction to 'enjoin the agency from

15   withholding agency records and to order the production of any agency records improperly

16   withheld.'" *Id*. (citing 5 U.S.C. § 552(a)(4)(B)). That holding, however, was made in the context

17   of an action brought pursuant to FOIA *against the government agency*. That is not the case here.

18   This court does not have authority, and Defendants do not cite to any, to order USCIS to appear

19   and answer Defendants' argument that the U Visa documents may not have been properly

20   withheld in a civil sexual harassment and discrimination action to which USCIS is not a party.

21        In conclusion, Plaintiff is not in possession of the U Visa documents, and so there is

22   nothing to compel. Defendants' motion to compel is denied insofar as the U Visa documents are

23

1  concerned. In light of this finding, Plaintiff's motion for protective order, insofar as it pertains to

2  the U Visa records, is denied as moot.

3  **E. Non-U Visa Immigration Records**

4        Defendants seek not only the U Visa documents, but all of the other immigration records

5  that were produced by USCIS. The court finds the requests are overbroad, Defendants have not

6  adequately articulated the relevance of these remaining non-U Visa documents, and the

7  substantial burden this discovery would impose outweighs any benefit of production.

8        Preliminarily, the court agrees that Defendants' requests for "any and all" documents

9  Plaintiff received or submitted to or from USCIS or any other Government agency in connection

10  with an application for immigration status or work authorization in the United States is

11  overbroad without a temporal or other reasonable limitation. *See Gopher Media, LLC v. Spain*,

12  No. 3:19-cv-02280-CAB-KSC, 2020 WL 6741675, at * 3 (S.D. Cal. Nov. 17, 2020) ("As a rule,

13  requests for 'any and all' documents or communications (or testimony about those materials) are

14  facially overbroad."); *Painters Joint Comm. v. Emp. Painters Trust Health & Welfare Fund*, No.

15  2:10-cv-01385-JCM-PAL, 2011 WL 4549232, at *2 (D. Nev. Sept. 29, 2011) (citation omitted)

16  (subpoena for "any and all documents" for a five-year period of time involving several different

17  individuals and entities is facially overbroad).

18        Next, Defendants have not sufficiently established the relevance of the remaining

19  immigration documents and an order requiring production of these documents would

20  substantially burden Plaintiff and the public interest and that burden outweighs any benefit of

21  production.

22        Mr. Kemp represents that the documents produced by USCIS span from 1988 to May of

23  2015, and relate to 2000-2001 and 2013-2014 immigration matters. He further indicates that they

contain birth certificates, state and federal tax returns dating back to 1997, medical records and bills related to minor children, insurance policy documents, DMV records, real estate transaction records, marriage certificates, and other information about third parties.

Defendants assert their theory of the case centers on Plaintiff's credibility and motivation to fabricate her allegations based on her immigration status. Therefore, documents relating to her immigration status are relevant. They also indicate that her immigration status may also be relevant to her ability to recover back wages or front pay.

The court has already established that Plaintiff's *U Visa application* is relevant to Plaintiff's credibility and motive to fabricate her allegations since Defendants' theory is that she was out of options with respect to her immigration status and fabricated the charges against Defendants so she could apply for a U Visa to gain legal immigration status. It is unclear, however, how the remaining immigration records produced by USCIS are relevant. "[C]ourts have frequently rejected the notion that immigration status is itself important enough evidence of plaintiffs' broader credibility to be discoverable." *Cazorla*, 838 F.3d at 556 (citing cases).

Moreover, Plaintiff's immigration status at the time the alleged incidents took place in 2018 and 2019 is not in dispute, so it is unclear why these records (which are from May of 2015 and prior) would be relevant. *Cazorla* pointed out that even when a plaintiff's immigration status is known, the plaintiff could nevertheless fear that they or their family would be reported to immigration authorities. It does not matter that Plaintiff had to report her immigration status in her U Visa application, because as *Cazorla* noted, the federal officials who process U Visa applications are not the same as those responsible for immigration enforcement. In addition, under *Rivera* and *Cazorla*, requiring disclosure of these documents would surely have an

intimidating or *in terrorem* effect on individuals outside this litigation, and would discourage them from raising these claims in the future.

Defendants also assert they have reason to believe that Plaintiff provided inaccurate or inconsistent representations to USCIS, which would challenge Plaintiff's credibility.  This appears to be speculation. Defendants do not explain why they have reason to believe Plaintiff provided inconsistent information, and without anything further, the court cannot conclude the documents are relevant. The court will not condone the use of discovery to engage in a "fishing expedition" into Plaintiff's remote immigration records. *See Rivera*, 364 F.3d at 1072 (citation omitted). Nor can the court determine that any probative value of these documents outweighs the *in terrorem* effect disclosure of this information would have on Plaintiff and other immigrant civil rights claimants.

Insofar as Defendants claim immigration status is relevant to Plaintiff's damages, Plaintiff's immigration status during the relevant time period appears to be undisputed. In any event, under *Rivera,* the availability of remedies, including backpay, can be determined (or even stipulated to) after the liability phase is complete.

Finally, the court points out that Plaintiff's counsel has offered to provide the last dated immigration application from the file with USCIS's decision stamp on it, *and,* in her reply brief, Plaintiff's counsel states that Plaintiff may be questioned about her immigration status at her deposition "within reason." (ECF No. 66 at 4.)

For these reasons, Defendants' motion to compel production of the non-U Visa records is denied, and Plaintiff's motion for a protective order as to these documents is granted. In light of the court's conclusion, it need not reach Defendants' argument regarding fees and costs incurred in connection with the motion to compel.

### III. CONCLUSION

Defendants' motion to compel (ECF No. 51) is **DENIED**, and Plaintiff's motion for protective order (ECF No. 58) is **GRANTED** with respect to the non-U Visa documents and **DENIED AS MOOT** with respect to the U Visa documents.

**IT IS SO ORDERED**.

Dated: March 31, 2022

_____
Craig S. Denney
United States Magistrate Judge